UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATERINA LIBRIZZO,<br>    Plaintiff,<br><br>v.<br><br>THE BERKSHIRE GROUP<br>    Defendant. | )<br>)<br>)<br>) CIVIL ACTION NO. 05-10918-LTS<br>)<br>)<br>)<br>) |

CHARGE TO THE JURY

November 17, 2006

SOROKIN, MJ

Members of the jury:

Now that the closing arguments of the lawyers have been presented, the time has come for me to instruct you on the law. When I have finished, you will begin your deliberations. My instructions will be in four parts: first, some instructions on the general rules that define and control the duties of a jury in a civil case; second, some instructions that you may find useful in evaluating the evidence that has been presented; third, I will explain the rules of law that you must apply to the facts as you find them; and finally I have some brief guidelines that will govern the conduct of your deliberations.

When you go to the jury room to deliberate you will have, in written form, the instructions I am now giving to you orally. But even though you will have them in the jury room with you, you should nevertheless listen very carefully to all of the instructions as I give them to you now.

GENERAL RULES

In defining the duties of the jury, let me first explain the general rules.

It is your duty to find the facts from all of the evidence in the case. I will describe the law to you, and you must apply the law to the facts as you find them. You must follow the law as I describe it, whether you personally agree with the wisdom of the law or not. It is your duty as jurors to decide the case fairly and impartially, regardless of any personal likes or dislikes, opinions, prejudices, bias or sympathy for one party or another. You must make your decision based solely on the evidence before you and according to the law.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. The lawyers may have commented during the trial both on the evidence and on the rules of law. But if what they have said about the evidence differs from your memory, let your collective memory control. And if what they have said about the law seems to you to have a different meaning in any way from my instructions on the law, you must be guided only by my instructions. And you must not read into these instructions, or into anything that I may have said or done during the course of the trial, any suggestion from me as to the verdict you should return. Whatever opinion I might have as to what your verdict should be is utterly irrelevant. The verdict is yours and yours alone to render as the finders of the facts. While I intend to be as helpful as I can in providing you with the knowledge of the law that you will require to render an intelligent and informed verdict, the law commits this case to your sole determination as the judges of the facts.

Plaintiff, you will recall, is the name we give to the person who brings a lawsuit. We refer to the person sued as the defendant. In a civil case, either a plaintiff or a defendant can be a legal entity like a corporation. The fact that a corporation is a party to this case should have no influence on your verdict.

Under our civil law, a corporation has the same rights, and the same responsibilities, as does a natural person, and is entitled to the same fair and conscientious consideration.

Let me make clear a further point of law. A corporation obviously can act only through its agents and employees. The law accordingly holds a corporation responsible for the acts done by its agents and employees that fall within the scope of their agency or employment. Here, there is no dispute that the employees at the Berkshire Group were acting within the scope of their authority at all relevant times.

In a civil case, a plaintiff bears the burden of proving her case by a preponderance of the evidence. As I explained in my opening instructions, this is a much lower standard of proof than proof beyond a reasonable doubt, the very high standard that we apply in a criminal trial. A plaintiff need not prove her case to any degree of mathematical certainty. Rather, she must produce evidence which, when considered in the light of all of the facts and evidence in the case, leads you to believe that her claims are more likely true than not. Should she fail to meet this burden, your verdict must be for the defendant.

In determining whether any fact in issue has been proved by a preponderance of the evidence in the case, unless otherwise instructed, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

## EVALUATING EVIDENCE

Before I turn to the applicable principles of law, let me first briefly review for you what is and is not evidence in a civil case.

Evidence is typically presented at a trial in one of three ways.

First, through the sworn testimony of witnesses, both on direct and cross-examination. Deposition testimony read into the record is also evidence to be treated like any other evidence.

Second, through physical objects, like documents and photographs, that are identified by a witness, and admitted as exhibits during the trial.

Third, by stipulation, or agreement between the parties that certain facts are true and need not be independently proven as such at trial.

Certain things are not evidence and should have no influence on your verdict.

1. Arguments and statements by lawyers, as I have cautioned several times, are not evidence. What the lawyers have said over the course of the trial you may find helpful, even persuasive, in reaching a judgment, but the facts are to be determined from your own evaluation of the testimony of the witnesses, the exhibits, and any reasonable inferences that you choose to draw from the facts as you find them.

2. Questions to the witnesses are not evidence. They can only be considered in the sense that they give context or meaning to a witness's answer.

3. Objections to questions are not evidence. Attorneys, as I explained, have a duty to their clients to object when they believe that a question is improper under the rules of evidence. You should not be influenced by the fact that an objection was made or by the way I ruled on it. If I sustained the objection, you should ignore the lawyer's question, and any assertion of fact it might have contained. If I overruled the objection, you should treat the witness's answer like any other.

4. Testimony that I excluded, struck, or that I instructed you to disregard is not evidence. You

should also, as I have cautioned, ignore editorial comments made by the attorneys during their presentations, particularly those intended to characterize the testimony of witnesses. Whether or not a witness's testimony was believable on any particular point is a determination that only you can make.

5. Occasionally an item was marked for identification as a reference. If that item was not later admitted as an exhibit and given an exhibit number in lieu of a letter, that item is not evidence and should be ignored.

6. Notes, if you have kept them, and most of you have, are not evidence. They are a personal memory aid to be used to refresh your recollection of the evidence during the deliberations.

7. Finally, anything you may have seen or heard outside the courtroom during the course of the trial is not evidence.

Regardless of the way in which evidence is presented, it comes in one of two forms, as either direct or circumstantial evidence. Direct evidence is direct proof of a fact, usually presented through the testimony of a person who claims to have been an eyewitness to an event or a participant in a conversation. When you evaluate direct testimony your decision is fairly straightforward. Do you believe that what the witness has told you is accurate? Circumstantial evidence, on the other hand, is the proof of a chain of circumstances, or a set of facts, from which you could infer or conclude that another fact is true, even though you have no direct evidence of that fact. You all have experience in your everyday affairs drawing inferences based upon circumstantial evidence.

For instance, if you were to awake in the morning and, even though the day was bright and clear, see puddles of water on the street, you might draw the inference that it had rained during the night even though your sleep had been uninterrupted. In other words, the fact of rain is an inference that

could be drawn from the presence of water on the street. An inference may be drawn, however, only if it is reasonable and logical, and not if it is speculative or based on conjecture. If for example, you observed puddles of water on your street, but not on any other street in your neighborhood, other facts, like a broken water main, or if you live in the suburbs, a neighbor's malfunctioning sprinkler system, might explain the presence of water. In deciding whether to draw an inference, you must look at and consider all of the facts in the case in the light of reason, common sense, and your own life experience.

Neither type of evidence, direct or circumstantial, is considered superior or inferior to the other. Both types of evidence may be considered in reaching your verdict and may be given whatever weight you as the finders of fact deem that particular evidence to be worth.

Most evidence received at trial is offered through the testimony of witnesses. As the jury, you are the sole judges of the credibility of these witnesses. If there are inconsistencies in the testimony, it is your function to resolve any conflicts, and decide where the truth lies.

You may choose to believe everything that a witness said, or only part of it, or none of it. If you do not believe a witness's testimony that something happened, that of course is not evidence that it did not happen. It simply means that you must put aside that testimony and look elsewhere for credible evidence before deciding where the truth lies.

Often it may not be so much what a witness says, but how he or she says it that might give you a clue whether or not to accept his version of an event as believable. You may consider a witness's character, his or her appearance and demeanor on the witness stand, his or her frankness or lack of frankness in testifying, whether the witness was contradicted by anything that he or she said before the trial, and whether his or her testimony is reasonable or unreasonable, probable or improbable in light of

all the other evidence in the case. You may take into account how good an opportunity the witness had to observe the facts about which he or she testifies, the degree of intelligence the witness shows, and whether his or her memory seems accurate. You may also consider the witness's motive for testifying, whether he or she displays any bias in doing so, and whether he or she has any interest in the outcome of the case. Now, simply because a witness has an interest in the outcome of the case does not mean that the witness is not trying to tell you the truth as he or she recalls it or believes it to have been. But a witness's interest in the case is a factor that you may consider along with everything else. You may also consider the fact that a witness may be perfectly sincere in his or her account of an event and simply be mistaken as to the truth.

In deciding whether or not to believe a witness, keep in mind that people sometimes forget things, or get confused, or remember an event differently. Memory is not always reliable, and when someone recounts a story twice, it will seldom be identical in every detail, unless it is a memorized lie or the witness is possessed of extraordinary perception and recall. It is for you to decide whether any contradictions in a witness's testimony are innocent lapses of memory or intentional falsehoods. That may depend on whether important facts or small details are at issue, and how important the facts might have appeared to the witness at the time they were perceived.

The weight of the evidence does not necessarily depend on the number of witnesses testifying for one side or the other. You must determine the credibility of each witness who testified, and then reach a verdict based on all of the believable evidence in the case.

## ELEMENTS OF THE CLAIMS

Now I want to turn to the principles of law that govern the specific claims and defenses made in

this case. Ms. Librizzo has presented two legal claims for your decision. The first claim is one of pregnancy discrimination. That is, Ms. Librizzo claims that she was subjected to discrimination when she became pregnant in December of 2001 and May of 2003. The second claim is factually related to the first. Ms. Librizzo claims that she was terminated in retaliation for complaining about the defendant's discrimination against her.

The law prohibits discrimination in the workplace based on gender and pregnancy. It provides that "it is an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [that individual's] . . . sex." In addition, the law provides that "because of sex" includes "because of pregnancy, childbirth, or related medical conditions."

Under the law, Ms. Librizzo must prove four things by a preponderance of the evidence.

First, Ms. Librizzo must show that she is a member of a protected class. There is no dispute that for purposes of her gender discrimination claims, Ms. Librizzo is female and therefore protected under the law. She is also a member of a protected class if she was pregnant.

Second, she must show that she was performing her job duties adequately.

Third, Ms. Librizzo must prove that she suffered an "adverse employment action." An adverse employment action involves a serious and material change in the terms, conditions, or privileges of employment. By "material," I mean that the adverse action alleged must have had a meaningful consequence. Examples of adverse employment actions include, but are not limited to, a material deprivation of compensation, demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and termination. However, an employee's subjective feelings of disappointment or displeasure concerning an employment action do not constitute an adverse

employment action.

In this case, Ms. Librizzo claims that after she became pregnant, the Berkshire Group discriminated against her by taking unsubstantiated disciplinary actions, requiring unreasonable work hours, harassing her about her need for pre-natal medical appointments, and her maternity leave. In addition, she was terminated.

Fourth, Ms. Librizzo must prove that she suffered the adverse employment action(s) because of her pregnancies. It is not enough for Ms. Librizzo to show that she was treated unfairly or wrongly. Instead, she must demonstrate that Berkshire Group's treatment of her was driven by pregnancy discrimination.

Discrimination is, of course, a matter of intent. In this case, you will have to determine the defendant's intent, or state of mind. Direct evidence can consist of statements of a defendant related to the plaintiff's claim that suggests a discriminatory attitude towards pregnant women. An employer may not be aware of its bias. Employment decisions that are made because of stereotypical thinking about people because of their gender or pregnancy are bias. Most people are reluctant to overtly admit to a discriminatory motive. Therefore, while it is always open to a plaintiff to present direct evidence of discrimination where it is available, the law recognizes that in most cases, indirect, or circumstantial evidence, will be a plaintiff's only resort. You may examine a defendant's actions and words, and all of the surrounding circumstances, to help you determine the defendant's motive or state of mind.

Here, the Berkshire Group has presented evidence that the actions that it took with respect to Ms. Librizzo were unrelated to her gender and pregnancies. If you conclude that this explanation is true, you must find in favor of the Berkshire Group. The Berkshire Group does not have the burden of

9

persuading you that its reasons are true. Rather, it remains open to Ms. Librizzo to persuade you that the Berkshire Group's explanation is contrived and false. If you disbelieve the explanation given by the Berkshire Group, you are permitted, but not compelled, to draw an inference that the true and determinative reason for the Berkshire Group's action(s) was discriminatory. That inference may be sufficient in and of itself for your to return a verdict in Ms. Librizzo's favor, if you find that given the totality of the circumstances, she has proven discrimination by a preponderance of the evidence. Ms. Librizzo must show that the real reason for the adverse employment action(s) was discriminatory.

Let me stress that the issue is not whether the Berkshire Group was well-managed, or whether it made decisions on a rational or well-reasoned basis. An employer is perfectly free to make bad judgments, or to implement personnel decisions that another employer might find unenlightened, or that other people may disagree with. What an employer is <u>not</u> privileged to do is to make employment decisions for discriminatory reasons. The issue is whether Ms. Librizzo suffered an adverse employment action because of her pregnancies.

## RETALIATION

The law also prohibits an employer from retaliating against an employee because she has complained about an unlawful employment practice. Specifically, the law provides that "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice." Ms. Librizzo claims that the Berkshire Group unlawfully retaliated against her because she complained about what she believed to be discriminatory practices in the workplace.

Ms. Librizzo claims that the Berkshire Group retaliated against her by terminating her

employment because she complained that she was subjected to pregnancy discrimination. In order to prove her retaliation claims, Ms. Librizzo must demonstrate the following three elements by a preponderance of the evidence:

<u>First</u>, she must show that she engaged in protected conduct by complaining about discrimination and/or retaining an attorney;

<u>Second</u>, Ms. Librizzo must show that she suffered an adverse employment action; and

<u>Third</u>, she must prove that the adverse employment action occurred because she complained about discrimination.

The law of retaliation necessarily requires a plaintiff to prove that she experienced an adverse employment action <u>after</u> she engaged in protected activity. However, I caution you that the mere fact that an adverse employment action occurred after a complaint does not necessarily prove that the two events were causally connected. A plaintiff must prove that the adverse employment action was actually <u>caused</u> by the plaintiff's complaint about discrimination.

As I told you earlier, in order to establish that she suffered an adverse employment action, Ms. Librizzo must prove by a preponderance of the evidence that she experienced some material adverse employment action. Examples of adverse employment actions include, but are not limited to, a material deprivation of compensation, demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations and termination. I remind you that an employee's subjective feelings of disappointment or displeasure concerning an employment action do not constitute an adverse employment action.

If you find that Ms. Librizzo produced evidence that she suffered an adverse employment

action, you may look to the Berkshire Group to articulate lawful reasons for its actions. However, the Berkshire Group does not have the burden of persuading you that its reasons are true. The burden of persuasion on the retaliation claim remains at all times with Ms. Librizzo, and she must persuade you, by a preponderance of the evidence, that the defendant terminated her in retaliation for her complaints of discrimination. If the plaintiff is able to demonstrate that the defendant's explanation for termination is false, this may give rise to an inference that the real reason for the action was retaliation. That inference may be sufficient in and of itself for you to return a verdict for Ms. Librizzo if you find that given the totality of the circumstances, Ms. Librizzo has proven retaliation by a preponderance of the evidence. Ms. Librizzo must show that the real reason for her termination was retaliation for her complaints about being subjected to discrimination.

Again, your task is not determine whether the reasons for the Berkshire Group's actions were sound business decisions. Instead, you must determine whether those reasons were discriminatory.

## DAMAGES

In addition to her claims, a plaintiff must prove her damages. You will reach this issue only if you find that the defendant in fact discriminated against Ms. Librizzo because of her pregnancy. Now, I want to tell you about what damages are recoverable by the plaintiff if you decide that she has proved any one or all of her claims against the defendant. The fact that I am instructing you on damages does not mean that I am attempting in any way to suggest to you what your verdict should be.

The purpose of the law in awarding compensatory damages is to compensate an injured person for the losses she has incurred. The object, as best as money can accomplish it, is to restore the injured

person to the position she would have been in had the wrong not occurred.

There is no special formula for assessing damages. It is your obligation to determine what is fair, adequate and just. You must be guided by your common sense and your conscience in translating into dollars and cents that amount which will fairly and reasonably compensate Ms. Librizzo for the full extent of her losses.

A. Ms. Librizzo makes the following two compensatory damages claims:

1. <u>Back Pay</u>

Ms. Librizzo's first claim for damages is for back pay. Back pay is the amount of Ms. Librizzo's lost earnings from the date of the adverse employment action until today. This amount includes any lost salary, bonuses, employment benefits, and health insurance benefits that would have accumulated had Ms. Librizzo not been terminated. It is Ms. Librizzo's burden to prove that she lost wages and benefits, and she must also prove the amount of the loss. You should decrease this amount by any earnings and benefits that Ms. Librizzo has received from another employer since the date of the adverse employment action.

The plaintiff has a duty to mitigate damages. This means that she has a duty to avoid or reduce the damages. A plaintiff fails to mitigate her damages if: (1) comparable employment was available to her; (2) she was not reasonably diligent in seeking comparable employment; and (3) it was reasonably likely that she would have obtained one of those comparable jobs. It is the defendant's burden to prove to you that the plaintiff has failed in her duty to mitigate damages by seeking other employment.

If the Berkshire Group has proven that Ms. Librizzo has failed to mitigate her damages, then you should reduce any back pay award to Ms. Librizzo by the amount that she could have earned in

wages and benefits at the comparable job.

    2. Emotional Distress

You may also award Ms. Librizzo a sum of money to compensate her for any pain, anguish, emotional distress, or humiliation that she may have suffered as a result of any discriminatory treatment by the Berkshire Group. These types of damages are meant to compensate what the law usually designates as pain and suffering. By definition, these damages are imprecise. Consequently, a plaintiff has no burden of proving these damages to any exact figure. Again, it is your duty to award a sum that you find fair and just. In this regard, you may consider the intensity and duration of the plaintiff's feelings, and the extent and egregiousness of the defendant's conduct in deciding the sum that you best think will make Ms. Librizzo whole.

It is important that the total sum awarded not understate nor exceed fair compensation for the entire injury. This is a matter committed to your common sense and fair appraisal. In addition, Ms. Librizzo can not recover for emotional distress that was caused by other circumstances apart from the actions of the Berkshire Group. Finally, you should not consider interest on damages in making your calculations. That is done by the Court.

    B. Punitive Damages

If you find that the Berkshire Group intentionally discriminated against Ms. Librizzo, you may also consider an award of punitive damages. Punitive damages are different from compensatory damages. Unlike compensatory damages, which compensate the victim for the harm she has suffered, the purpose of punitive damages is to punish a defendant who has engaged in intentional discrimination, and acted with malice or reckless indifference to the rights of others and where the defendant's conduct

warrants condemnation and deterrence.

To qualify for punitive damages, a plaintiff must first show that her employer acted with: (a) malicious or reckless indifference to her protected rights to be free from discrimination, or (b) an evil motive. Next, she must show that the employee who discriminated against her was a managerial agent acting within the scope of their employment. Here, there is no dispute that Ms. Librizzo's supervisors were managerial agents acting within the scope of their employment. If the plaintiff has proven the first two factors, the defendant can avoid punitive damages by showing that it engaged in good faith efforts to comply with the anti-discrimination laws. The burden is on the employer to show good faith compliance.

Factors that you may consider in determining the amount of punitive damages to award, if any, include, but are not limited to: (1) the character and nature of the defendant's conduct; (2) the actual harm suffered by the plaintiff; and (3) the likelihood that the defendant or others would repeat the conduct if the punitive award is not made.

If you award punitive damages, you should exercise calm discretion and sound reason when deciding on an appropriate amount.

## CONCLUSION

Finally, let me say a few words about your deliberations.

Each of you must decide the case for yourself, but you should do so only after considering all of the evidence, after discussing it fully with the other jurors, and after listening to the views of your fellow jurors. Do not be afraid to change your opinion if you think that you are wrong after hearing the opinions of your fellow jurors. But do not come to a decision simply because other jurors insist that it is

right, nor surrender an honest belief about the weight and effect of the evidence simply for the expedience of reaching a verdict.

This case has taken a great deal of time and effort to prepare and try. There is no reason to think that it could have been better tried or that another jury would be better qualified than you are to decide it. It is important therefore that you reach a verdict if you can do so conscientiously. Your verdict must be unanimous as to each of the special questions I am going to ask you to answer. Your answers will be recorded on the verdict slip by the juror I appoint as your foreperson.

[APPOINT FOREPERSON]. As foreperson, you will have the same voice and the same vote as the other deliberating jurors. You will act as the moderator of the discussion and will serve as the jury's spokesperson. Your most important obligation is to insure that any juror who wishes to be heard on any material issue has a full and fair opportunity to be heard by his or her fellow jurors. When the jury has reached a verdict, you will fill in the appropriate answers, sign and date the verdict slip, and inform the court officer that the jury is ready to return to the courtroom.

If it becomes necessary during your deliberations to communicate with me, you may do so by sending a note through the courtroom clerk. The note must be signed by your foreperson. No member of the jury should ever attempt to communicate with me except by such a signed writing.