UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-CV-10918 LTS

_____
                                                )
KATERINA LIBRIZZO                               )
                                                )
        Plaintiff                               )
                                                )
v.                                              )
                                                )
THE BERKSHIRE GROUP                             )
                                                )
        Defendant                               )
_____)


**PLAINTIFF'S MOTION FOR A NEW TRIAL UNDER RULE 59**

NOW COMES Katerina Librizzo, the plaintiff in the above action, and

respectfully seeks a new trial pursuant to Rule 59.  As grounds therefore, the plaintiff

states as follows:


**I.      INTRODUCTION AND PROCEDURAL POSTURE**

Katerina Librizzo, the plaintiff in this action, brought claims for gender

discrimination, pregnancy discrimination and retaliation in violation of Title VII, 42

U.S.C. 2000e, and M.G.L. Chapter 151B against the defendant The Berkshire Group, her

former employer.  The Berkshire Group employed Ms. Librizzo from September 1999 to

May 13, 2004, when it terminated Ms. Librizzo.

The parties tried the action to a jury beginning on November 13, 2006.  On

November 17, 2006, the jury returned a verdict for the defendant on all counts.  The

plaintiff now moves for a new trial pursuant to Rule 59 on the grounds that the Court's

instructions on the law to the jury omitted a material principal of law that was critical to the jury's application of the law of retaliation to the facts of the case.

## II.    SUMMARY OF ARGUMENT

As grounds for the plaintiff's motion, the plaintiff respectfully challenges the Court's definition of "protected activity" for the purpose of instruction on the elements of retaliation. Specifically, the plaintiff contends that the definition of "protected activity" under Title VII and Chapter 151B in this case should have included an instruction that the element of "protected activity" includes seeking a restriction or accommodation for a partial inability to work or for a modified work schedule as a result of pregnancy. The plaintiff further contends that, in light of compelling evidence of The Berkshire Group's adverse employment action taken as a response to her requested work schedule modification, she has suffered irreparable prejudice by the omission of a jury instruction to the effect that "protected activity" includes seeking a modified work schedule due to pregnancy. As such, the plaintiff contends that the only suitable relief under the circumstances is a new trial.

## III.    UNDISPUTED FACTS PERTINENT TO THIS MOTION

Ms. Librizzo worked mainly in accounting for The Berkshire Group. In May, 2003, she became pregnant with her second child. In September, 2003, The Berkshire Group provided her with a favorable job performance evaluation. In October, 2003, Ms. Librizzo testified that her managers, Kelly McCusker and Chris Nichols, increased the number of hours required beyond 40 per week. On the afternoon of October 29, 2003,

Ms. Librizzo e-mailed her managers and Dan Stravinski, The Berkshire Group's Human Resources Director, that she had a doctor's note that restricted her work hours to 40 per week. Trial Exhibit 23: Plaintiff's October 29, 2003 e-mail.

Kelly McCusker testified that she was angry when she read Ms. Librizzo's e-mail regarding the restriction, and that she felt that Ms. Librizzo was "using her pregnancy to get our of doing her work." On the morning of the next day, October 30, 2003, Ms. McCusker drafted a warning memorandum for alleged work performance problems, which included a threat of termination. On the same day, October 30, 2003, Chris Nichols also drafted a warning memorandum regarding Ms. Librizzo's alleged non-adherence to business hours. Mr. Nichols's memorandum also included a threat of termination. Trial Exhibits 29 and 30: Warning Memoranda dated October 30, 2003. Both memorandums were included in Ms. Librizzo's personnel file. The Berkshire Group cited to the two October 30, 2003 memoranda as partial support and grounds for Ms. Librizzo's termination on May 13, 2004. Trial Exhibit 57: Position Statement of The Berkshire Group.

The Berkshire Group's employment policies included that it provides employees with short term sick leave with pay, as well as limitations on the number of hours an employee can work due to illness or injury if supported by documentation from a doctor. Furthermore, The Berkshire Group includes within their written policies a statement that they comply with the requirements of the Family Medical Leave Act ("FMLA") in that they provide job protected leaves pursuant to the FMLA for any serious health condition. Trial Exhibit: The Berkshire Group's Employee Manual.

IV.    **THE JURY INSTRUCTIONS**

During the Court's jury charge conference on November 16, 2006, the plaintiff

sought an instruction that the definition of "protected activity" for purposes of the

elements of retaliation include seeking a restriction because of pregnancy.  The relevant

exchange at the charge conference was as follows:

17

19   MR. COHEN:  On the instructions as to
20   retaliation, I essentially have two things:  One is a
21   very specific thing and one is sort of a broader wording
22   of the elements.  But first, the instructions as written
23   seem to limit the protected activity to only complaints
24   of discrimination.  So, for example, on line -- I'm
25   sorry, page 11, the second paragraph, "First she

18

 1   must" -- as to the elements, "First she must show that
 2   she engaged in protected conduct by complaining about
 3   discrimination."
 4        And my position is that it's a lot broader than
 5   that -- or somewhat broader than that.  That it should
 6   be protected activity; in other words, if they retaliate
 7   against her because of some protected activity which may
 8   not just be limited to a complaint of discrimination --
 9        THE COURT:  You're saying I should say, "First
10   she must show she engaged in protected activity."
11        MR. COHEN:  Yeah.  And that leads to, I guess,
12   another point that:  Should we define "protected
13   activity"?
14        THE COURT:  How would you define it?
15        MR. COHEN:  **Well, "protected activity" in the**
16   **case law that I've read, and I apologize, I don't have**
17   **cites with me, but it can be -- "protected activity" can**
18   **be -- can be a report or a complaint of discrimination,**
19   **but it can also be retaining an attorney, it can be --**
20   **even as it applies to this case, seeking a restriction**
21   **because of a pregnancy can be protected activity as it**
22   **relates to retaliation.**
23        **And that's akin to cases in -- under the ADA and**

24  **disability discrimination laws where an employee**
25  **requests an accommodation for a disability and is then**

**19**
1  **retaliated against. That can be both discrimination on**
2  **the basis of a disability and retaliation.**
3      **So our position is that we can include within**
4  **the definition of "protected activity" seeking or asking**
5  **for a restriction because of a pregnancy.**
6      THE COURT:  So you want me to say, "First they
7  must show that she engaged in protected activity," and
8  then second, third, then have something that says,
9  "protected activity is," and define it.
10      **MR. COHEN:  Yes. It may be a report or a**
11  **complaint of discrimination, it may be retaining an**
12  **attorney if it's known to the employer, or it may be**
13  **seeking a restriction because of the -- because of a**
14  **pregnancy. A restriction or an accommodation because of**
15  **a pregnancy.**
16      THE COURT:  What about that, Mr. Aronson or Ms.
17  Ryan?
18      MS. RYAN:  Your Honor, if I may. I think that
19  the facts as they've been presented, the only thing
20  that's really occurred here is that there's a complaint.
21  I think that that adequately captures the protected
22  activity here.
23      THE COURT:  Well, but she retained a lawyer.
24      MS. RYAN:  But isn't that the same thing:  She
25  intends to complain. Intends to file a complaint.

**20**
1      As far as relying on ADA cases, first of all, I
2  don't believe that pregnancy would qualify as a
3  disability. And I appreciate that you're only using
4  those as an analogy, but I don't think they apply here.
5  Those are disability cases. An accommodation wasn't
6  made here. She asked to be limited to 40 hours of work
7  a week.
8      THE COURT:  Suppose that she just said, "I want
9  to be limited to 40 hours a week, and here's my doctor's
10  note; because of my pregnancy, I can only work 40 hours
11  a week." And suppose that the evidence were that they
12  said, "Fine, but now we're going to take an adverse
13  employment action against you because you sought this --
14  because of your seeking this 40 hours a week."
15      MS. RYAN:  But isn't that seeking to protect a

16  right that she has?  That's not seeking to --
17      THE COURT:  But don't you think -- well, doesn't
18  retaliation protect her also from invoking the rights
19  that she has, not just complaining about them?  But she
20  has the right -- isn't she -- she's to be free from
21  discrimination.  And doesn't the retaliation protect her
22  from not just -- not just the activity of complaining
23  about it but also invoking the --
24      MS. RYAN:  I'm sorry.  I don't see it, your
25  Honor.  If you brought in a note for any kind of ailment

21

1  that you had and you wanted reduced hours because of it
2  or, you know, some incapacity, you may have an ADA claim
3  but you don't have a gender discrimination claim.
4      THE COURT:  You mean the retaliation is because
5  of the medical condition, not because of anything --
6  doesn't the definition of "gender" include pregnancy?
7      MS. RYAN:  It does, but that's what I'm saying.
8  I don't believe pregnancy is considered a handicap.  I'm
9  not sure that you can make that leap.
10      THE COURT:  Well, forgetting about the
11  disability cases.
12      MS. RYAN:  Sure.
13      THE COURT:  What I'm saying is that if she
14  invokes her rights --
15      MS. RYAN:  But she's not invoking her right to
16  be pregnant or a right to be free from discrimination;
17  she's relying on a doctor that's stated that she should
18  work only 40 hours.
19      THE COURT:  Well, you don't disagree by saying
20  she engaged in protected activity, and then define the
21  protected activity; you're just saying the definition of
22  "protected activity" means filing a report of
23  discrimination or making a complaint of discrimination.
24      MS. RYAN:  That would be fine.  I don't see that
25  we need a definition.  I think that your instruction is

22

1  adequate as it is.
2      THE COURT:  All right.
3      MS. RYAN:  You give examples -- you give many
4  examples of protected activity.  I'm not sure why the
5  need for an additional definition.
6      THE COURT:  All right.  Well, let me think about
7  that.  It seems that retaining an attorney I see as sort

8   of very close to complaining but not exactly the same,
9   and it seems fair to -- I'm going to -- it seems to me
10  if she was retaliated against because she hired a
11  lawyer...
12      MS. RYAN:  Retaining an attorney, we'd be fine
13  with that, your Honor.
14      THE COURT:  Really the issue that you have is
15  with seeking a restriction or accommodation because of a
16  pregnancy.
17      MS. RYAN:  Uh-huh.
18      THE COURT:  It seems like she has a point about
19  that, Mr. Cohen.  It seems like -- I mean, if they did
20  something because of that, that's discrimination --
21  because of a pregnancy, that would arguably be gender
22  discrimination, right?  And -- but how is it
23  retaliation?
24      MR. COHEN:  Well, what I'm getting at, just to
25  make it more concrete as to this case, is that the

23

1   evidence has been that on October 29 she e-mails them
2   and says, "I need a restriction according to my doctor,"
3   and then the next morning they write these warning memos
4   which include threats of termination.  And whether she's
5   invoking some right or doing some protected activity by
6   e-mail where she notified them that she needed a
7   restriction or whether she's seeking to protect her
8   pregnancy and then is treated differently as to the
9   terms and conditions as a result of it --

After hearing argument from defense counsel, the Court ultimately did not give

the plaintiff's sought instruction.

## V.    **ARGUMENT**

A.    The Pregnancy Discrimination Act ("PDA") as it relates to requests for accommodations.

An employer subject to Title VII may not treat a pregnant employee less

favorably than an employee not affected by pregnancy with regard to their respective

abilities or inabilities to work.  *42 U.S.C. 2000e(k).*  This requirement under Title VII

includes that an employer may not treat a pregnant employee's request for leave or for a

modified work schedule different from a non-pregnant employee's request for leave or

modified work schedule due to a non-pregnancy related inability to work.  *42 U.S.C.*

*2000e(k); Smith v. Morse,* 76 F. 3d. 413, 420, (1ˢᵗ cir. 1996); *29 C.F.R. 1604.10(b).*

The Equal Employment Opportunity Commission's ("EEOC") regulation at 29

C.F.R. 1604.10(b) (in relevant part) summarizes Title VII's requirements in this regard as

follows:

> Disabilities caused or contributed to by pregnancy, childbirth or related medical
> conditions, for all job-related purposes, shall be treated the same as disabilities
> caused or contributed to by other medical conditions, under any health or
> disability insurance or sick leave plan available in connection with employment.
> Written or unwritten employment policies and practices involving matters such as
> the commencement and duration of leave, the availability of extensions, the
> accrual of seniority and other benefits and privileges, reinstatement, and payment
> under any health or disability insurance or sick leave plan, formal or informal,
> shall be applied to disability due to pregnancy, childbirth or related medical
> conditions on the same terms and conditions as they are applied to other
> disabilities…

Consequently, The Berkshire Group was required to treat Ms. Librizzo's request

for a restriction due to her pregnancy the same as it treated other, non-pregnant

employees' request for leave and/or restrictions or accommodations in order to comply

with the PDA.

B.    Ms. Librizzo's October 29, 2003 e-mail was a request for a limitation to
      her weekly work hours due to her pregnancy.

The evidence at trial in this case was that in October, 2003, The Berkshire Group

made it clear that it would require hours greater than 40 per week from Ms. Librizzo.

Trial Exhibit 18: October 22, 2003 memorandum.  On October 29, 2003, Ms. Librizzo e-

mailed her supervisors, Kelly McCusker and Chris Nichols, that she had a doctor's note

that restricted her to working no more than 40 hours per week.

The facts in this case are similar to those in *EEOC v. Ackerman, Hood &*

*McQueen, Inc.,* 956 F 2d. 944 (10th Cir. 1992).  In *EEOC,* the plaintiff employee, like Ms.

Librizzo in this case, provided her employer with a doctor's note restricting her to 40

hours per week due to her pregnancy.  The employer in the *EEOC* case responded by not

only refusing the accommodation, but by terminating the employee.  *EEOC,* 956 F. 2d. at

946.   The Court in EEOC affirmed the District Court's finding that the employer had

violated the PDA.  *Id.* at 948.

The holding in the *EEOC* case illustrates that an employee such as Ms. Librizzo's

request for a restriction to 40 hours per week due to her pregnancy such as Ms. Librizzo's

e-mail of October 29, 2003, is an appeal for protection under the PDA.  An employer

such as The Berkshire Group is required to treat such a request from a pregnant employee

no less favorably than it would treat a request for such a restriction from an employee

affected by a non-pregnancy related disability.  *See Id.* at 948; and *Ensley Gaines v.*

*Runyon,* 100 F. 3d. 1220, 1226 (6th Cir. 1996) (PDA applied to pregnant employee's

request for light duty).

C.      The Berkshire Group's employment policies provide for limited work
        schedules and leaves for medical disabilities.

In order to invoke the protections of the PDA as they relate to requests for leaves

or restrictions due to pregnancy, a pregnant employee such as Ms. Librizzo must show

that the employer provides for such leaves or restrictions to those employees who request

them for non-pregnancy related disabilities.  *Byrd v. Lakeshore Hospital,* 30 F. 3d 1380,

1382-1383 (11th Cir. 1994). However, Ms. Librizzo is not required to produce evidence specific examples of non-pregnant workers who were denied their requests for such medical leaves or restrictions. Evidence of The Berkshire Group's employee sick leave and limited work hours policies is sufficient for the presumption that The Berkshire Group customarily follows their policy. *See Byrd,* 30 F. 3d. at 1382-84 .

In this case, The Berkshire Group's policy was to afford its employees job protected sick leave for less serious disabilities, limited work hours, and medical and other leaves for serious health conditions. The Berkshire Group's "Sick Pay" policy states that "Short term sick leave with pay is granted to regular, full time employees only when they are unable to work due to short term illness or injury." The policy goes on to provide that "any limitations on the number of hours you can work or on the actual work that can work or the actual work that can or cannot be performed  - given the illness – should be outlined in the documentation from your doctor." Finally, The Berkshire Group declares in their employment policies that they will comply with requests for leaves associated with serious health conditions of employees or their families pursuant to the Family Medical Leave Act ("FMLA"). Trial Exhibit: The Berkshire Group's employee manual.

Consequently, The Berkshire Group was required to treat Ms. Librizzo's October 29, 2003 request for a limitation to her work hours no less favorably than a request for such a limitation submitted by an employee affected by a condition other than pregnancy, in order to comply with the PDA. *Smith,* 76 F. 3d. at 420.

D.      Ms. Librizzo's request for a 40 hour restriction was protected activity for the purpose of Title VII's retaliation prohibition.

An employer such as The Berkshire Group must grant an employee's request for a restriction or accommodation due to pregnancy if the it would grant the same restriction to an employee disabled by a non-pregnancy related condition in order to comply with the PDA.  It follows, then, that invoking such a right, such as Ms. Librizzo's October 29, 2003 request for a 40 hour per week restriction, is activity to be protected against retaliation.  This is no different than a disabled employee's request for an accommodation pursuant to the Americans with Disabilities Act ("ADA").

An employee who alleges he or she is disabled and seeks an accommodation for the alleged disability engages in protected activity for the purposes of the retaliation provisions of the ADA.  In *Wright v. CompUSA, Inc.,* the First Circuit held that a disabled employee's request for an accommodation is protected activity for the purposes of the retaliation prohibitions of ADA.  *Wright v. CompUSA, Inc.*, 352 F. 3d. 472, 477-478 (1st Cir. 2003).  The Court in *Wright* confirmed that an employer may not retaliate against an employee for requesting an accommodation for an alleged disability, even if the employee's claim for disability discrimination failed on the merits.  *See Wright*, 352 F. 3d at 477.

Ms. Librizzo, like a disabled employee who requests an accommodation, engaged in protected activity when she e-mailed her supervisors relative to her need for a 40 hour per week restriction on October 29, 2003.  *Compare Wright*, 352 F. 3d at 477.  Consequently, The Berkshire Group was prohibited from taking adverse employment action against Ms. Librizzo as a response to her request for a 40 hour work restriction due to her pregnancy, without violating the retaliation prohibitions of Title VII.

E.    Evidence of The Berkshire Group's retaliation for Ms. Librizzo's October
      29, 2003 request for a restriction due to pregnancy was compelling.

Perhaps the most compelling evidence supporting Ms. Librizzo's retaliation claim

was that Kelly McCusker and Chris Nichols, her supervisors, responded to Ms.

Librizzo's October 29, 2003 request for a 40 hour per week restriction by issuing two

written warnings purportedly about work performance, and threats of termination, on the

morning of the next day.  Courts consider unwarranted negative job evaluations such as

the two warnings in this case to be 'adverse action" for the purpose of retaliation under

Title VII.  *Gu v. Boston Police Department,* 312 F. 3d. 6, 14 (1st Cir. 2002).

In conjunction with Ms. McCusker's testimony that she was "angry" when she

received Ms. Librizzo's October 29, 2003 e-mail, and that she felt that Ms. Librizzo was

"using her pregnancy" to get out of doing her job, the timing of the warnings are

compelling evidence of a retaliatory motive.  *See Troy v. Bay State Computer Group,*

*Inc.,* 1994 U.S. Dist. LEXIS 14741 (proof of causal connection may occur when there is

adverse action soon after the employee engages in protected activity.)

F.    The Court's jury instructions as to retaliation should have included a
      request for a restriction due to pregnancy as "protected activity."

At the November 16, 2006 jury charge conference, the plaintiff requested that the

Court's definition of the "protected activity" element of retaliation include that a request

for a work restriction or accommodation for a pregnancy.  Charge conference transcript,

pages 17-19.  Although the Court considered such an instruction, ultimately, the Court

declined to give it after oral argument from defense counsel.

The omission of a definition of the "protected activity" element of retaliation was

fatal to the plaintiff's claim in light of the compelling evidence of The Berkshire Group's

adverse employment action taken on October 30, 2003 in response to Ms. Librizzo's request for a 40 hour restriction. Had the jury been instructed that such a request for a restriction due to pregnancy is protected activity under Title VII, they would have had a basis under which to find that The Berkshire Group's October 30, 2003's warnings and threats of termination were unlawful retaliation. Conversely, without such an instruction, the jury did not have the applicable law to apply to the facts surrounding the events of October 29 and 30, 2003.

The omission of an instruction that a pregnant employee's request for an accommodation or restriction due to her pregnancy had a profound impact on the case at large and warrants a new trial. If the jury had the legal basis on which to find that the October 30, 2003 warning memoranda were unlawfully retaliatory, then such a finding would have also affected the jury's findings relative to The Berkshire Group's May 13, 2004 termination of Ms. Librizzo because The Berkshire Group partly grounded the termination on the October 30, 2004. Trial Exhibit 57: The Berkshire Group's MCAD Position Statement.

VII.    CONCLUSION

WHEREAS, the plaintiff respectfully seeks that the Court order a new trial under Rule 59 because 1) Ms. Librizzo's October 29, 2003 request for a 40 hour per week restriction, in light of her employer's written employment policies, invoked her rights under the PDA, and 2) therefore Ms. Librizzo's October 29, 2003 request for the 40 hour per week limitation was protected activity under the PDA for the purposes of retaliation; 3) the evidence of The Berkshire Group's retaliation for Ms. Librizzo's October 29, 203

request was compelling; 4)  the omission of a jury instruction that a request for an

accommodation due to pregnancy is protected activity for purposes of the elements of

retaliation left the jury with no basis on which to find that The Berkshire Group's

warning memoranda on October 30, 2003 were retaliatory, and 5) that such a finding

would have materially to the remainder of plaintiff's case.

For the plaintiff,
By her attorney,

Sol J. Cohen /s/
Sol J. Cohen
BBO # 630776
COHEN & SALES
43 Thorndike Street
Cambridge, MA 02141
(617) 621-1151

CERTIFICATE OF SERVICE

I, Sol J. Cohen, attorney for the above-named Plaintiffs, certify that I have served a copy of the above document on the Defendant electronically and by first class mail, postage pre-paid, on the 11th day of December, 2006 to the Defendant's attorney at the following address:

Joseph H. Aronson
The McCormack Firm, LLC
One International Place, 7th Floor
Boston, MA 02110


Sol J. Cohen /s/
Sol J. Cohen