UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
KATERINA LIBRIZZO,                  )
    Plaintiff,                      )
                                    )
    v.                              )   CIVIL ACTION NO. 05-10918-LTS
                                    )
THE BERKSHIRE GROUP                 )
    Defendant.                      )
_____)

ORDER ON PLAINTIFF'S MOTION FOR A NEW TRIAL

January 5, 2007

SOROKIN, MJ

    Plaintiff Katerina Librizzo ("Librizzo") brought claims for gender discrimination, pregnancy discrimination, and retaliation in violation of Title VII, 42 U.S.C. § 2000e (the "Pregnancy Discrimination Act", or "PDA"), and Mass. Gen. Laws c.151B against her former employer, the Berkshire Group.  On November 17, 2006, a jury returned a verdict for the Berkshire Group on all counts.

    On December 11, 2006, Librizzo filed a motion for a new trial pursuant to Federal Rule of Civil Procedure 59.  Rule 59(a) does not provide specific standards for granting or denying a motion for a new trial.  Rather, it permits a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  Fed.R.Civ.P. 59(a).  In the First Circuit, "[a] verdict maybe set aside and new trial ordered when the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a clear miscarriage of justice."  Colon-Millin v. Sears Roebuck de Puerto Rico, Inc., 455 F.3d 30,

35 (1st Cir. 2006)(citation omitted).

In the instant motion, Librizzo argues that she is entitled to a new trial because the Court's instructions to the jury omitted a principle of law that is material to her claim of retaliation. Librizzo contends that the Court's definition of "protected activity" should have included an instruction that such activity includes seeking a restriction or accommodation for a partial inability to work, or for a modified work schedule as a result of pregnancy. Specifically, she argues that she was entitled to this instruction because on October 29, 2003, she engaged in protected activity when she sent an e-mail to her supervisors stating that she had a doctor's note that restricted her to working no more than 40 hours per week.

Fed.R.Civ.P. 51(c)(2)(A) provides the standard for evaluating whether a party has preserved an objection with regard to jury instructions. Under the rule, an objection is timely if:

> a party that has been informed of an instruction or action on a request before the jury is instructed and before final jury arguments . . . objects at the opportunity for objection required by Rule 51(b)(2) [which provides that the Court must give the parties an opportunity to object on the record and out of the jury's hearing to the proposed instructions and actions on requests before the instructions and arguments are delivered.]

The record indicates Librizzo failed to preserve her objection to the jury instructions. Prior to the Charge Conference, the Court provided counsel with a written copy of the proposed jury instructions. During the Conference, counsel for Librizzo raised an objection to the proposed instructions on the retaliation claim and the following colloquy ensued:

> MR. COHEN: On the instructions as to retaliation, I essentially have two things: One is a very specific thing and one is sort of a broader wording of the elements. But first, the instructions as written seem to limit the protected activity to only complaints of discrimination. So, for example, on line - - I'm sorry, page 11, the second paragraph,

> "First she must" - - as to the elements, "First she must show that she engaged in protected conduct by complaining about discrimination." And my position is that it's a lot broader than that - - or somewhat broader than that. That it should be protected activity which may not just be limited to a complaint of discrimination - -
>
> THE COURT: You're saying I should say, "First she must show she engaged in protected activity."
>
> MR. COHEN: Yeah. And that leads to, I guess another point that: Should we define "protected activity"?
>
> THE COURT: How would you define it?
>
> MR. COHEN: Well, "protected activity" in the case law that I've read, and I apologize, I don't have the cites with me, but it can be - - "protected activity" can be - - can be a report or a complaint of discrimination, but it can also be retaining an attorney, it can be - - even as it applies to this case, seeking a restriction because of a pregnancy can be protected activity as it relates to retaliation. And that's akin to cases in - - under the ADA and disability discrimination laws where an employee requests an accommodation for a disability and is then retaliated against. That can be both discrimination on the basis of disability and retaliation. So our position is that we can include within the definition of "protected activity" seeking or asking for a restriction because of pregnancy.

Transcript of Charge Conference, at pp. 17-19.

After hearing from counsel from the defendant, the Court discussed the issue further.

> THE COURT: It seems like [defense counsel] has a point about that, Mr. Cohen. It seems like - - I mean, if they did something because of [the request for a 40 hour work week], that's discrimination - - because of a pregnancy, that would arguably be gender discrimination, right? And - - but how is it retaliation?
>
> MR. COHEN: Well, what I'm getting at, just to make it more concrete as to this case, is that the evidence has been that on October 29 she e-mails them and says, "I need a restriction according to my doctor," and then the next morning they write these warning memos which include threats of termination. And whether she's invoking some right or doing some protected activity by e-mail where she notified them that she needed a restriction or whether she's seeking to protect her pregnancy and then is treated differently as to the terms and conditions as a result of it - -
>
> THE COURT: I mean, isn't that more equivalent to her being - - if, in fact, the facts as you suggest, and the jury agrees with your assessment of the fact, that the jury just - -that they just discriminated against her at that moment. She said basically - - it's no different -

> - I mean, than - - but what if she applied for - - what if she had been doing something, they didn't realize that she was a woman, and then she announced she's a woman and then they immediately took adverse employment action against her? It's not retaliation, it's discrimination, right?
>
> MR. COHEN: **Well, yeah. I see the point. Yeah, I suppose - - I suppose, you know, from my perspective I can handle that argument.** At the closing what I - -
>
> THE COURT: So I will just change this: "First she must show that she engaged in protected conduct by complaining about discrimination and/or retaining an attorney." What's next?

Transcript of Charge Conference, at pp. 22-24 (emphasis added).

When the Court notified counsel of its view that counsel's argument more plausibly related to a claim for *discrimination* rather than one for *retaliation,* counsel abandoned his prior objection by stating, "Well, yeah. I see the point. Yeah, I suppose - - I suppose, you know, from my perspective I can handle that argument."

As a result of counsel's affirmative statement, it was the Court's understanding that counsel no longer objected to instruction. In fact, the Court viewed the statement as a withdrawal of the previous objection and an assent to the retaliation instruction as proposed. In addition, it is crucial to note that neither after the Court announced the revised instruction to counsel at sidebar, nor after the Court delivered the instructions to the jury, and provided counsel with the opportunities to make further objections, did counsel for Librizzo object to this element of the instruction. See Transcript Excerpt (Docket # 47-3), at page 28.

Accordingly, the Court finds that because counsel for Librizzo withdrew his initial objection to the retaliation instruction at the Charge Conference, and subsequently failed to object to the instruction when given two opportunities to do so, plaintiff failed to object in a timely fashion.

However, "[f]ailures to object . . . are [mere forfeitures that are] almost always subject to review for plain error." Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 35 (1st Cir. 2006), citing Chestnut v. City of Lowell, 305 F.3d 18, 20 (1st Cir.2002) (en banc) (per curiam). In addition, Fed.R.Civ.P 51 provides that

> [a] court may consider a plain error in the instructions affecting substantial rights that has not been preserved as required by Rule 51(d)(1)(A) or (B).

Fed.R.Civ.P. 51(d)(2).[1]

Accordingly, Librizzo's failure to object is entitled to review for plain error. To obtain relief under this standard Librizzo must show: "(1) an error, (2) that is plain (i.e. obvious and clear under current law), (3) that is likely to alter the outcome, and (4) that is sufficiently fundamental to threaten the fairness or integrity or public reputation of the judicial process." Colon-Millin, 455 F.3d at 41.

There simply was no error here, let alone plain error. To sustain a claim for retaliation under both Title VII and Mass. Gen. Laws c.151B, a plaintiff must show that (1) she engaged in protected conduct; (2) experienced an adverse employment action; and (3) a causal connection exists between the protected conduct and the adverse action. See Gu v. Boston Police Department, 312 F.3d 6, 13 (1st Cir. 2002), citing White v. N.H. Dept. of Corr., 221 F.3d 254, 262 (1st Cir. 2000) and Tate v. Dept. of Mental Health, 419 Mass. 356 (1995). The retaliation

---

[1] "Fed.R.Civ.P. 51 was amended in 2003, effective Dec. 1, 2003. The 2003 amendments were designed in part to ease the burden on parties in preserving their objections to instructions where the district court had already made a definitive ruling, on the record, rejecting a request for a particular instruction. See Fed.R.Civ.P. 51(d), Advisory Comm. Notes, 2003 Amendments (2006). The amended rule also formally recognizes the general principle found in case law that a court may review unpreserved objections to jury instructions for plain error. See id.; Colon-Millin, 455 F.3d at 40, n. 7.

provision of Title VII prohibits retaliation by employers against those employees who engaged in protected conduct by either (1) making a charge or testifying, assisting, or participating in an investigation, proceeding, or hearing under Title VII; or (2) opposing an unlawful employment practice. See 42 U.S.C. § 2000e-3(a)[2].

Similarly, Massachusetts' retaliation provision provides that it is unlawful

> for any...employer . . . to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under section five.

M.G.L. c. 151B(4)(4).

In support of her motion, Librizzo argues that Title VII mandates that an employer must treat a pregnant employee's request for leave or for a modified work schedule in the same manner that it treats such requests made by other non-pregnant employees. See 42 U.S.C. 2000e(k).[3] While plaintiff's reading of the statute may be correct as she applies it to her

---

[2] Which provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

[3] 42 U.S.C. 2000e(k) provides: "The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work . . ."

discrimination claim, it does not necessarily support her argument that she engaged in "protected conduct" for purposes of her retaliation claim by sending the e-mail to her supervisors. By doing so, Plaintiff neither made a charge or testified in an investigation, nor did she oppose an unlawful practice, as required under both Title VII and Massachusetts law.[4]

Rather than citing Title VII cases, Plaintiff attempts to support her argument by urging the Court to consider that under the Americans with Disabilities Act ("ADA"), a disabled employee's request for an accommodation is a form of protected activity. In Wright v. CompUSA, Inc., 352 F.3d 472, (1st Cir. 2003), an employee who had been diagnosed with attention deficit disorder ("ADD") and sought accommodation from his employer sued for discrimination and retaliation under the ADA after he was discharged. In reviewing the District Court's dismissal of the retaliation claim, the First Circuit, squarely deciding the issue for the first time, ruled that "requesting an accommodation is protected activity for the purposes of [the ADA's retaliation provision]." Id. at 478.

However, this case was not brought under the ADA, and accordingly, it must be analyzed according to the current state of the law with regard to Title VII and M.G.L. c. 151B. Plaintiff has not offered even a single case, nor has the Court found any law, to support her contention that

---

[4] Similarly, plaintiff's citations to various cases interpreting the PDA do not assist her argument. For example, in EEOC v. Ackerman, Hood & McQueen, Inc., 956 F.2d 944 (10th Cir. 1992), a pregnant plaintiff provided her employer with a doctor's note indicating that she should not work more than 40 hours per week. See id. at 945. The Appeals Court affirmed the District Court's finding that by discharging the plaintiff, the employer had violated the PDA. Id. at 948. Librizzo argues that this finding illustrates that her e-mail of October 29, 2003 was "an appeal for protection under the PDA." However, in EEOC, the plaintiff brought a claim for *discrimination* only; no claim for retaliation was asserted.

requesting a modified work schedule qualifies as "protected activity" for retaliation purposes under Title VII or M.G.L. c. 151B. She has not made a charge or testified, nor has she opposed an unlawful practice, as required by the plain terms of both the federal and state statutes. Accordingly, on the record before the Court there was no error by the Court, nor did her trial result in a "clear miscarriage of justice." Colon-Millin, 455 F.3d at 35.

Even assuming *arguendo* that the Court erred in not instructing the jury as requested, Plaintiff simply can not show plain error. While the Court finds Plaintiff's argument that her claim should be considered according to the same framework as claims brought under the ADA to be some force, it cannot be said that it would be "clear" and/or "obvious" to do so, given the plain terms of the statute and the dearth of case law on point. The law has been found to be "clear" and "obvious" where there is "Supreme Court precedent on point." Chestnut v. City of Lowell, 305 F.3d 18, 20 (1st Cir. 2000). In contrast, an "unsettled state of the law" precludes a finding of plain error. United States v. Marino, 277 F.3d 11, 32 (1st Cir.2002). Plaintiff's failure to show plain error ends the inquiry. As the First Circuit has cautioned after setting forth the four elements for plain error, "[i]f an assignment of error fails to pass through any of these four screens, it is not a basis for reversal." United States v. Sanchez-Barrios, 424 F.3d 65, 73 (1st Cir. 2005).

## CONCLUSION

      For the foregoing reasons, Plaintiff's motion for a new trial is <u>DENIED</u>.

SO ORDERED.

/s/ Leo T. Sorokin
_____
UNITED STATES MAGISTRATE JUDGE